1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10    MICHAEL CARROLL,

11                        Plaintiff,              CASE NO. 3:15-CV-05170-BHS-JRC

12          v.                                    REPORT AND RECOMMENDATION

13    KELSEY STEWART, et al.                      NOTED FOR: MARCH 31, 2017

14                        Defendants.

15

16          The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

17    States Magistrate Judge J. Richard Creatura. Before the Court is defendants' first (Dkt. 52) and

18    second motions for summary judgment (Dkt. 80).

19          Plaintiff alleges that while plaintiff was serving the community custody portion of his

20    2007 sentence, several community corrections officers and their supervisor retaliated against

21    him, unreasonably searched his residences, violated his due process rights, and that he was held

22    in jail beyond the statutory maximum. The majority of plaintiff's claims are barred by the statute

23    of limitations because he failed to file this cause of action within three years of the alleged

24    constitutional violations. Plaintiff's due process claims should be dismissed because the evidence

shows that plaintiff's arrest, detention, and tolling of his supervision were consistent with state law and did not violate his due process rights. The evidence also shows plaintiff was released on his statutory maximum expiration date, and plaintiff has presented no evidence to the contrary. Accordingly, the Court recommends that defendants' second motion for summary judgment be granted and that this action be dismissed. The Court recommends denying defendants' first motion for summary judgment as moot.

**BACKGROUND**

On March 16, 2015,[1] Plaintiff Michael Carroll filed an application to proceed *in forma pauperis* and proposed civil rights complaint. Dkt. 1. On March 25, 2015, the Court directed service of plaintiff's complaint. Dkts. 5, 6. On May 12, 2015, defendant Stewart filed an answer to plaintiff's complaint. Dkt. 13. The next day, on May 13, 2015, the Court issued a pretrial scheduling order that discovery be completed by September 25, 2015 and dispositive motions be filed by October 23, 2015. Dkt. 15.

On June 8, 2015, defendants Jane Doe and Stewart filed a motion to dismiss. Dkt. 17. On June 18, 2015, defendants filed a motion to stay discovery and plaintiff filed a motion to amend his complaint. Dkts. 19, 20. On July 29, 2015, the Court granted plaintiff's motion to amend and denied defendants' motion to stay. Dkt. 28. The undersigned also issued a report and recommendation that defendants' motion to dismiss (Dkt. 17) be denied as moot as plaintiff was granted leave to file an amended complaint. Dkt. 29. Judge Settle adopted the report and recommendation. Dkt. 30.

---

[1] Plaintiff's IFP application is dated March 16, 2015, but was not filed with the Court until March 19, 2015. Dkt. 1.

Plaintiff filed his amended complaint on August 31, 2015. Dkt. 31. Defendant Kelsey filed an answer to plaintiff's amended complaint on September 14, 2015. Dkt. 33. On September 21, 2015, the Court directed service of plaintiff's amended complaint. Dkt. 34. On November 20, 2015, defendants Chamberlin, Theissen, and Westberg filed an answer to plaintiff's amended complaint. Dkt. 44. On January 26, 2016, defendants Jackson and Mitchell filed an answer to plaintiff's amended complaint. Dkt. 51.

Defendants filed their first motion for summary judgment ("first motion") on February 3, 2016. Dkt. 52. On March 2, 2016, plaintiff filed a motion for extension to file his response.  Dkt. 54. The Court granted plaintiff's motion and plaintiff's response was due March 21, 2016. Dkt. 59.  On March 7, 2016, plaintiff filed a motion for discovery (Dkt. 55) and motion for continuance of defendants' motion for summary judgment ("motion for continuance") under Federal Rule of Civil Procedure 56 (Dkt. 56). In support of his motion for continuance, plaintiff filed a declaration, signed under penalty of perjury, and copies of his outstanding discovery requests. *See* Dkt. 56-1.

On March 10, 2016, defendants filed their response to plaintiff's motion for a continuance, motion for discovery, and their motion for summary judgment. Dkt. 57. On the same date, defendants also filed a second motion to stay discovery. Dkt. 58. Plaintiff filed a response on April 4, 2016. Dkt. 60.

On April 22, 2016, the Court granted plaintiff's motion for a continuance and deferred ruling on the pending motion for summary judgment until discovery was completed. Dkt. 61. The Court extended the dispositive motion deadline to October 30, 2016. *Id.* Defendants' first motion was re-noted for October 30, 2016. *Id.*

On October 20, 2016, defendants filed their second motion for summary judgment ("second motion"). Dkt. 80. The second motion seeks summary judgment on the same grounds as the first motion, and adds defendant Rocky Bornkhorst. *Id.* In support of their second motion, defendants submitted five exhibits. *Id.* at 80-1.

Defendants served plaintiff with a *Rand* notice and copies of the motion for summary judgment and supporting documentation on October 20, 2016. Dkt. 81. On October 27, 2016, plaintiff filed a motion for extension to file his response to defendants' second motion. Dkt. 82. The Court granted plaintiff's motion and plaintiff's response was due November 30, 2016, Dkt. 83, which he filed that day. Dkt. 84. Defendants filed their reply on December 7, 2016. Dkt. 85. Plaintiff filed a "second response" on December 13, 2016, which the Court construes as a surreply. Dkt. 86.

On January 4, 2017, the Court ordered supplemental briefing with respect to plaintiff's claim that his due process rights were violated between January 25, 2013 and February 27, 2013. Dkt. 87. On January 10, 2017, plaintiff filed a motion to clarify. Dkt. 88. Defendants filed their supplemental brief on January 20, 2017, and plaintiff filed his response on February 9, 2017. Dkts. 89, 90.

Plaintiff's complaint was signed under penalty of perjury and is being considered as evidence. Dkt. 31. Because plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

1

2

3

**FACTS**

4    In 2007, plaintiff was convicted of a Class C felony and sentenced to a total of 43 months

5    confinement, which included 17 months of community custody. Dkt. 80-1, Exhibit 3. The

6    maximum sentence for plaintiff's conviction was 60 months. *Id.* Plaintiff was required to comply

7    with several conditions, such as reporting to his community custody officer ("CCO"), not

8    possessing or consuming controlled substances, and remaining within a specific geographic

9    boundary. *Id.* Plaintiff was advised that the Department of Corrections ("DOC") may issue

10    warrants and/or detain him if he violated a condition of his community custody. *Id.* Pursuant to

11    RCW 9.94A.171, plaintiff's community custody was tolled for 579 days because he failed to

12    report to his CCO. RCW 9.94A.171 ("Any term of community custody shall be tolled by any

13    period of time during which the offender has absented [himself] from supervision without prior

14    approval of the entity under whose supervision the offender has been placed.").

15    Between 2009 and 2013, plaintiff was supervised on two separate cause numbers, King

16    County Cause No. 06-1-05619-8 and King County Cause No. 07-1-00319-9. Dkt. 33, fn. 4,

17    Exhibit 2. According to defendants' answer, plaintiff was sometimes supervised by the same

18    CCO, and sometimes by different CCOs. *Id.* Plaintiff served the community custody portion of

19    his sentence from 2009 to 2013. Dkt. 80-1, Exhibit 1, Exhibit 2.

20    In 2009, plaintiff filed in a separate case in this Court, *Carroll v. Lee et al.,* Case No. 08-

21    0975-RSL, and the defendants' motion for summary judgment was denied. Dkt. 31 at 27.

22    Plaintiff alleges that while under community custody supervision, he was retaliated against by

23    defendants, several CCOs and their supervisor, because of his pending lawsuit. *Id.* at 27-28.

24

1    Plaintiff also alleges that defendants failed to follow RCW 9.94A.737, which provides for

2    disciplinary proceedings for community custody violations and that he was harassed and his due

3    process rights were violated. *Id.* at 28. Plaintiff alleges that his home was unreasonably searched.

4    *Id.* at 30. Plaintiff alleges that he was kept in jail beyond the five-year statutory maximum. *Id.* at

5    29-31. Plaintiff also alleges that he was intentionally injured by an unidentified CCO. *Id.* at 29.

6    Plaintiff seeks monetary damages. *Id.* at 31-32.

7                                    **STANDARD OF REVIEW**

8           The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

9    over the material facts before the court and the moving party is entitled to judgment as a matter

10   of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*

11   *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990).  The moving party is entitled

12   to summary judgment if the evidence produced by the parties permits only one conclusion.

13   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  To determine if summary judgment

14   is appropriate, the court must consider whether particular facts are material and whether there is

15   a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c).  The

16   materiality of a given fact is determined by the required elements of the substantive law under

17   which the claims are brought. *Anderson*, 477 U.S. at 248.  Factual disputes that do not affect the

18   outcome of the suit under the governing law will not be considered.   *Id.*  Where there is a

19   complete failure of proof concerning an essential element of the non-moving party's case on

20   which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and

21   the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S.

22   317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented

23   through the prism of the substantive evidentiary burden"). However, when presented with a

24

motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249-50. In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). However, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

**FIRST AND SECOND MOTIONS FOR SUMMARY JUDGMENT (Dkts. 52, 80)**

As an initial matter, the Court must determine which motion for summary judgment should be considered at this time. *See* Dkt. 52 (first motion); Dkt. 80 (second motion). Defendants' second motion for summary judgment (Dkt. 80) raises the same issues as the first motion (Dkt. 52), but adds defendant Bronkhorst. *See* Dkt. 80. Thus, the Court recommends that the first motion (Dkt. 52) be denied as duplicative. In deciding defendants' second motion, the Court will consider plaintiff's opposition (Dkt. 84), defendants' reply (Dkt. 85).

1    The Court declines to consider plaintiff's "second response," Dkt. 86, which the Court

2    interprets as a surreply.  Neither the Federal Rules of Civil Procedure nor the Local Rules

3    provide the right to file a surreply. Under Local Rule 7(g), parties are permitted to file a surreply

4    to strike material contained in or attached to a reply brief. The party must file a notice of intent to

5    file a surreply as soon after receiving the reply brief as practicable, the surreply must be filed

6    within five days of filing of the reply brief, and the surreply is limited to addressing the request

7    to strike. *Id.* Extraneous argument or a surreply filed for any other reasons will not be considerd.

8    *Id.* The Court notes that plaintiff's surreply is not dated, but was filed on December 13, 2016, six

9    days after defendants' reply. *See* Dkts. 85, 86. Because plaintiff failed to seek leave to file his

10   surreply and the surreply is not limited to addressing a request to strike, the Court declines to

11   consider the arguments made in that document.

12                                            **DISCUSSION**

13    In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

14   suffered a violation of rights protected by the Constitution or created by federal statute, and (2)

15   the violation was proximately caused by a person acting under color of state law. *See Crumpton*

16   *v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to

17   identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

18   (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually

19   named defendants caused, or personally participated in causing, the harm alleged in the

20   complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

21    **1.   Defendant Hernandez**

22    Defendants' counsel has not appeared on behalf of Defendant Hernandez. *See* Dkt. An

23   order directing service on defendant Hernandez was entered on December 5, 2015 but defendant

24

1  Hernandez did not return a waiver of service. *See* Dkt. 47. Defense counsel stated that defendant

2  Hernandez left the DOC. Dkt. 52 at 1, fn. 1. On July 29, 2016, the Court ordered defendants to

3  file defendant Hernandez's address under seal. Dkt. 74. Defendants' counsel provided defendant

4  Hernandez's last known address under seal to this Court, and on August 29, 2016 the Court

5  ordered service. Dkts. 75, 76. On September 8, 2016, plaintiff's complaint and waiver of service

6  were returned marked "Undeliverable/Unable to Forward." Dkts. 75, 77. Defendants argue that

7  dismissal of defendant Hernandez would be appropriate under these circumstances, if this Court

8  finds that the action fails to state a claim. 28 U.S.C. § 1915(e)(2)(b). *Id.*

9      Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service of the summons

10  and complaint must be made upon a defendant within 90 days after the filing of the complaint.

11  Unless the plaintiff can show good cause for his failure to serve, the court shall dismiss the

12  action without prejudice as to that defendant or shall extend the time for service.  Fed. R. Civ. P.

13  4(m).  A court cannot exercise jurisdiction over a defendant without proper service of process.

14  *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Direct Mail*

15  *Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir.1988) ("A federal

16  court does not have jurisdiction over a defendant unless the defendant has been served properly

17  under Fed. R .Civ. P. 4").

18      Plaintiff has not provided a current address for unserved defendant Hernandez. The Court

19  has attempted to serve defendant Hernandez at the address provided by defendants, however, its

20  efforts were unsuccessful. Thus, the undersigned recommends that plaintiff's claims against

21  defendant Hernandez be dismissed without prejudice for lack of personal jurisdiction.

22  **2.  Statute of Limitations**

23      Because 42 U.S.C. § 1983 "does not contain its own limitations period, . . . the Supreme

1   Court has held that the appropriate period is that of the forum state's statute of limitations for

2   personal injury torts." *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *see also*

3   *Felder v. Casey*, 487 U.S. 131, 140 (1988) ("[W]e have directed the lower federal courts in §

4   1983 cases to borrow the state-law limitations period for personal injury claims."); *Lukovsky v.*

5   *City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) ("When . . . a federal civil

6   rights statute does not include its own statute of limitations, federal courts borrow the forum

7   state's limitations period for personal injury torts."); *Taylor v. Regents of the Univ. of Cal.*, 993

8   F.2d 710, 711 (9th Cir 1993). In Washington, the limitations period for personal injury torts is

9   three years. *See Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989); *Robinson v. City of Seattle*,

10  119 Wash.2d 34, 86 (1992); RCW 4.16.080(2).

11      "Although [state] law determines the *length* of the limitations period, federal law

12  determines when a civil rights claim *accrues*." *Lukovsky*, 535 F.3d at 1048 (emphasis in

13  original). "Accrual is the date on which the statute of limitations begins to run; under federal law,

14  a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis

15  of the action.'" *Id.* (citations omitted). That is, "the limitations period commences when the

16  plaintiff has 'a complete and present cause of action,'" and – unless otherwise provided by

17  Congress – "a cause of action does not become 'complete and present' for limitations purposes

18  until the plaintiff can file suit and obtain relief." *Bay Area Laundry v. Ferbar Corp. of Cal., Inc.*,

19  522 U.S. 192, 201 (1997) (citations omitted).

20      Defendants argue that claims 1, 2, part of 3, 4, 5, part of 9, and part of 10 are time-barred.

21  Dkt. 80. Plaintiff does not dispute that these claims are time-barred, and instead, his response

22  focuses on his claims that arose in 2013. Dkt. 84 at 13.

23      **a.  Claim 1**

24

1    Plaintiff claims that unidentified individuals subjected him to "differential and arbitrary

2  treatment" related to the housing voucher program and that his wife had to pay for his release

3  between July 2009 and August 2010. Dkt. 31 at 9-12 (CM/ECF page numbers). Plaintiff filed his

4  original complaint in March 2015, and his amended complaint in August 2015, outside of the

5  three-year statute of limitations federal courts adopted for civil rights claims. *See Wallace*, 549

6  U.S. at 387. Thus, the Court recommends granting defendants' second motion and dismissing

7  this claim as time-barred**.**

8         **b.  Claim 2**

9    Plaintiff alleges that he was mistreated by defendant Brown and several other DOC

10  employees from 2009 to 2010 related to the housing/voucher program. Dkt. 31 at 13-18. Plaintiff

11  alleges that in 2009 and 2010, defendant Bronkhorst searched his home. *Id.* Plaintiff alleges he

12  told defendant Brown, defendant Bronkhorst's supervisor about the searches, but that nothing

13  happened. *Id.* at 17. Plaintiff contends defendant Bronkhorst was not his CCO and that the

14  searches were excessive, vindictive, harassing, and unrelated to any legitimate penological

15  interests. *Id.* at 18.

16    The undisputed evidence shows that defendant Brown has not supervised plaintiff since

17  March 2010. Dkt. 80, Exhibit 2. Plaintiff's allegations against defendant Bronkhorst are limited

18  to conduct that occurred in 2009 and 2010. *See* Dkt. 31. Thus, the Court recommends granting

19  defendants' second motion and that this claim be dismissed as time-barred.

20         **c.  Part Of Claim 3**

21    Plaintiff alleges that defendant Hernandez failed to follow RCW 9.94A.737 when

22  addressing plaintiff's community custody violations from March 2010 to July 2010. Dkt. 31 at

23  18-20. As discussed above, the Court recommends granting defendants' second motion and

24

1    dismissing defendant Hernandez for lack of personal jurisdiction. Moreover, even apart from the

2    jurisdictional issues, this claim is time-barred.

3        **d.  Claim 4**

4        Plaintiff alleges that defendant Stewart failed to follow RCW 9.94A.737 and caused

5    plaintiff to suffer illegal incarceration sometime between August and November of 2010. Dkt. 31

6    at 20-22. The undisputed evidence shows that defendant Stewart stopped supervising plaintiff in

7    November 2010. Dkt. 80, Exhibit 2. The Court recommends granting defendants' second motion

8    and dismissing this claim as time-barred.

9        **e.  Claim 5**

10        Plaintiff alleges that defendant Jackson placed a GPS unit on him as a punishment for his

11    attempt to talk to her supervisor, and that the unit allegedly caused an open wound prompting

12    plaintiff to get treated by the doctor. Dkt. 31 at 22-24. Plaintiff alleges this occurred between

13    November 2010 and December 2011. *Id.* at 22. The undisputed evidence shows that on July 1,

14    2011 and September 16, 2011, defendant Jackson placed a GPS on plaintiff. Dkt. 80, Exhibit 5,

15    Chronological (Chrono) notes. On September 16, 2011, plaintiff requested to speak with

16    defendant Jackson's supervisor, defendant Chamberlin, and the appointment was made for

17    September 28, 2011. *Id.* The Court recommends granting defendants' second motion and

18    dismissing this claim as time-barred.

19        **f.  Part Of Claim 9**

20        Plaintiff alleges that defendant Chamberlin, the supervisor of the CCOs he names in his

21    complaint, "authorized" the violations of RCW 9.94A.737 between November of 2009 and

22    October of 2013. Dkt. 31 at 26-27. Because plaintiff alleges that defendant Chamberlain engaged

23    in discrete actions, the continuing violation doctrine does not apply to his claims. *See Nat'l R.R.*

24

1   *Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002) (The continuing violation doctrine

2   allows a plaintiff to seek relief for the cumulative effects of repeated conduct that began outside

3   the limitations period and continued into the limitations period. The doctrine, however, does not

4   apply to discrete acts that are time-barred, even when they relate to acts within the limitations

5   period.).  Thus, the portion of claim 9 that relates to the events allegedly occurring prior to

6   March 16, 2012, is time-barred. The Court recommends granting defendants' second motion and

7   that this part of claim 9 be dismissed. Nevertheless, even if all of plaintiff's claims fell within the

8   statute of limitations period, his conclusory allegations are insufficient to survive summary

9   judgment. *See below.*

10       **g.  Part Of Claim 10**[2]

11       Plaintiff alleges that from November 2009 to October 2013, defendants "continuously

12  disobeyed" RCW 9.94A.737, intentionally injured him by placing a GPS on him (*see* claim 5),

13  and that his house was searched (*see* claim 2). Dkt. 31 at 27-30. Plaintiff's allegations regarding

14  conduct that occurred prior to March 2012 are time-barred for the reasons explained above and

15  the Court recommends granting defendants' second motion and that this part of claim 10 be

16  dismissed.

17       **3.  Due Process Violations**

18       In the claims that are not barred by the statute of limitations, plaintiff alleges that in 2012

19  and 2013, defendants failed to hold a hearing regarding the alleged violations of his community

20  custody. Dkt. 31. Defendants argue that plaintiff fails to state a claim. Dkts. 80, 85; 90. [3]

21

22  _____

23       [2] Plaintiff entitles this claim "Overall Claim." Dkt. 31 at 27-29.
        [3] The Court notes that to the extent that plaintiff challenges the validity of the community
    custody portion of his sentence, defendants do not seek summary judgment based on *Heck v.*

24  *Humphrey,* 512 U.S. 477, 483-87 (1994) (holding that if a prisoner seeks to challenge the

**a.  Claims against Defendants Thiessen, Westberg and Mitchell**

Initially, the Court notes that the majority of plaintiff's claims fail because aside from plaintiff's unsupported and conclusory assertion that defendants failed to follow RCW 9.94A.737, plaintiff has offered no non-conclusory evidence to support his allegations that defendants violated his due process rights. The conclusory allegations contained in the complaint do not contain facts showing that defendants Mitchell, Westberg, and Thiessen took any actions which deprived plaintiff of his due process rights in connection with his community custody supervision. Plaintiff gives no information about any disciplinary hearings whatsoever; he merely contends that the procedures were not followed. These conclusory allegations do not show that defendants Mitchell, Westberg, and Thiessen performed an affirmative act, participated in another's affirmative act, or omitted to perform an act which she was legally required to do that violated plaintiff's constitutional rights. *See Arnold v. IBM,* 637 F.2d 1350, 1355 (9th Cir.1981) (quoting *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978)).

In his opposition to defendants' motion, plaintiff alleges that he was not told that he was accused of an alleged community custody violation, was not given notice, not given any hearing, and was not told that his sentence had been or would be tolled or extended based on the alleged violations. Dkt. 84 at 11, 20. Plaintiff admits that "sometimes the plaintiff was afforded a hearing, and other times he was not afforded a hearing or due process at all." *Id.* at 11. However, his response to defendants' motion was not signed under penalty of perjury, and cannot be considered as evidence. *See* Dkt. 84.

---

validity of a conviction or sentence, the prisoner must first demonstrate that the conviction or sentence has been successfully overturned). *See also Presier v. Rodriguez,* 411 U.S. 475, 500 (1973) (when a prisoner seeks speedier release from confinement, prisoner must proceed by way of a federal habeas corpus proceeding). Thus, the Court will not consider such an argument.

1    And even if the Court were to consider plaintiff's response, plaintiff fails to any specific

2    facts related to these allegations and mere conclusory allegations without more are insufficient to

3    support a § 1983 claim or withstand summary judgment. *See Ivey v. Board of Regents,* 673 F.2d

4    266, 268 (9th Cir. 1984). "[A] summary judgment motion cannot be defeated by relying solely

5    on conclusory allegations unsupported by factual data." *Taylor v. List,* 880 F.2d 1040, 1045 (9th

6    Cir. 1989). Accordingly, the Court recommends defendants' second motion be granted as to

7    these claims.

8              **b.  Claims 9 and 10**

9    In the part of Claim 9 that is not barred by the statute of limitations, plaintiff alleges that

10   between January and February 2013, he was denied due process because defendants failed to

11   conduct a hearing when he was confined for three days for violating the terms of his community

12   custody. Dkt. 31 at 26-27; Dkt. 84 at 16-17, 29, 35. Plaintiff alleges that if a hearing was

13   conducted, it was conducted in "secret." *Id.* In their reply, defendants argued that the facts and

14   new claim alleged in plaintiff's opposition should not be considered because plaintiff failed to

15   raise this claim in his complaint. Dkt. 85 at 1-2. In its Order Directing Supplemental Briefing,

16   Dkt. 87, the Court determined that a liberal construction found that plaintiff attempted to raise

17   the claim in his complaint. Dkt. 87 at 3. Thus, the Court considered the argument and ordered the

18   parties to submit supplemental briefing as to this claim. *Id.*

19   In the portion of claim 10 that is not time-barred, plaintiff alleges that on October 11,

20   2013, he was put in jail "with no explanation or reason" and was kept in jail past his statutory

21   maximum expiration date. Dkt. 31 at 24.

22   The undisputed evidence shows that on January 25, 2013, plaintiff failed to report to his

23   CCO and a Secretary's Warrant was issued for plaintiff's arrest. Dkt. 84 at 47; Dkt. 85, Exhibits

24

1    2, 3. It is also undisputed that on February 27, 2013, plaintiff was apprehended and defendant

2    Hernandez was assigned as plaintiff's CCO. Dkt. 89, Exhibit 2. In his motion to clarify, plaintiff

3    clarified that after his apprehension on February 27, 2013, he served three days of jail time

4    pursuant to a DOC warrant, not as a sanction per DOC Policy 460.130. Dkt. 88 at 3 (plaintiff's

5    motion to clarify); Dkt. 89 at 2, Exhibit 2 (defendants' supplemental brief). Defendants concede

6    that in their second motion, they erroneously argued that plaintiff was sanctioned with a low-

7    level three day sanction after his apprehension. Dkt. 89 at 2. On February 28, 2013, plaintiff's

8    detainer was cancelled and he was released on March 3, 2013. Dkt. 85, Exhibit 2.

9         Similarly, on October 8, 2013, plaintiff failed to report to his CCO and a warrant was

10   again issued for his arrest. Dkt. 80-1, Exhibit 1, OMNI report, entries dated 10/8/2013 and

11   10/10/2013. Plaintiff was apprehended on October 11, 2013 and detained at the King County

12   Jail. *Id.,* entry dated 10/11/2013. On October 14, 2013, defendant Chamberlain determined that

13   plaintiff's statutory maximum expiration date was October 18, 2013 and that plaintiff could not

14   be detained past that date. *Id.,* entry dated 10/14/2013. Defendant Chamberlain's entry states

15   "contacted hearing records unit and cannot hold in custody past [statutory maximum]. CCO will

16   serve [plaintiff] with letter to offender and cancel DOC hold on 10/18/2013." *Id.* Plaintiff was

17   released from the King County Jail on October 18, 2013. *Id.,* entry dated 10/21/2013, authored

18   by defendant Hernandez.

19        Initially, the record is devoid of any evidence that any of the named defendants were

20   responsible for plaintiff's February 2013 and October 2013 arrest or detention. The undersigned

21   has recommended that defendant Hernandez, who was plaintiff's CCO at the time of the alleged

22   violations, be dismissed for lack of personal jurisdiction. Defendant Chamberlain was defendant

23   Hernandez's supervisor at the time the alleged violations occurred. However, the record only

24

shows that she made an OMNI entry on March 4, 2013 after plaintiff was released and on

October 14, 2013, notifying the hearings unit of plaintiff's statutory maximum expiration date.

Plaintiff does not allege, or present any evidence, that defendant Chamberlain personally

participated in any decision not to conduct a hearing, or that any wrongful act on the part of

defendant Chamberlain contributed to a due process violation in connection the tolling of

plaintiff's sentence.

Nevertheless, even if plaintiff had alleged personal participation, his due process claims

fail because he has not offered any evidence showing how his constitutional rights were violated.

The Supreme Court considered the procedural due process rights of parolees facing revocation in

*Morrissey v. Brewer,* 408 U.S. 471 (1972). In *Morrissey,* the Court recognized two stages to the

parole revocation process: the arrest and preliminary hearing, and the formal revocation of

parole. *Id.* at 485. As to the first stage in *Morrissey,* the Court held that "due process requires that

after the arrest, the determination that reasonable grounds exits for revocation of parole should

be made by someone not directly involved in the case." *Morrissey,* 408 U.S. at 485.

Courts have applied the *Morrissey* standards to revocation of community custody. *See In*

*re McNeal*, 99 Wash. App. 617, 630–31 (2000) (Before an individual's community custody is

revoked, he or she is entitled to the procedural due process protections established for parole

revocation hearings in *Morrissey*, not lesser protections applicable to prison disciplinary

proceedings, as liberty interest of such individual closely resembles that of parolee. The court

specifically held that its ruling was "limited to community custody revocation hearings").

In this case, plaintiff does not allege that his community custody was revoked and the

evidence shows that he was detained several times while under community custody supervision,

but any attempts to revoke his community custody were dropped after the detainer was cancelled

and he was released. Dkt. 80, Exhibit 1, Exhibit 2. Thus, plaintiff was not entitled to the

protections under *Morrissey. See Wheat v. Lee,* 2013 WL 2285174, *8 (N.D. Cal. 2013) (Since

"it appears that all attempts to revoke [plaintiff's] parole were dropped after the parole hold was

lifted and he was released[,][n]o procedural due process rights under [*Morrissey*] were

violated[.]"); *Coffelt v. Baker*, 2013 WL 5964592, at *7 (C.D. Cal. Nov. 7, 2013) (The defendant

maintained a parole hold against plaintiff which kept him in jail for eight days. Parole was not

revoked, thus, plaintiff failed to set forth a cognizable *Morrissey* procedural due process claim).

With respect to plaintiff's allegations that his community custody was tolled which also

violated his due process rights, plaintiff's supervision under community custody was tolled

during the time periods that he absented himself from supervision without approval. *See* RCW

9.94A.171(2) ("Any term of community custody shall be tolled by any period of time during

which the offender has absented himself or herself from supervision without prior approval of

the entity under whose supervision the offender has been placed."). While RCW 9.94A.737

provides for a hearings process when an offender is subject to sanctions as a result of community

custody violations, it does not provide for such a process when an offender's term of supervision

is tolled or the offender is detained pursuant to a DOC warrant.

In sum, the evidence in the record shows that plaintiff's arrest, detention, and tolling of

his supervision were consistent with state and federal law and did not violate his due process

rights. While plaintiff argues that a hearing should have been held before he was detained based

on a DOC warrant and his sentence was tolled, neither state nor federal law requires such a step.

Plaintiff has failed to meet his burden to establish the absence of a genuine issue of material fact

or to demonstrate that any reasonable jury could find in his favor. Accordingly, the Court

recommends that defendants' motion be granted and that these claims be dismissed.

1    **4. Release Date**

2    Plaintiff is alleging that he was held past his statutory maximum expiration date because

3    the community custody portion of his sentence should not have been tolled in February 2013 and

4    October 2013. Dkt 31 at 28-29. Defendants contend that the evidence shows that plaintiff was

5    not held past his release date of October 18, 2013 and thus, plaintiff's claim fails. Dkt. 80.

6    Defendants submit evidence of plaintiff's electronic OMNI file which shows that he was

7    released on October 18, 2013, his statutory maximum expiration date. Dkt. 80-1, Exhibit 1; Dkt.

8    89-1, Exhibit 2 (Violation Report). In his response, plaintiff cites to *Haygood v. Younger,* 769

9    F.2d 1350, 1354 (9th Cir. 1985 (*en banc*). Dkt. 84 at 19-20. Plaintiff argues that he was

10   incarcerated based on "secretly" alleged violations, and that he was not informed or granted a

11   hearing with respect to the "secret" violations. Dkt. 84 at 19. In their reply, defendants

12   summarily argue that the DOC correctly calculated the maximum expiration date for his 2007

13   sentence, and that plaintiff fails to provide any support for his allegation that his maximum

14   expiration date was miscalculated. Dkt. 85.

15   First, plaintiff, as the opposing party, has the burden to present evidence from which a

16   reasonably jury could find in his favor. *See Anderson,* 477 U.S. at 251-52. Here, plaintiff's

17   verified complaint and declaration contain conclusory and speculative statements which lack

18   support from specific facts or personal knowledge to show that he was held past his statutory

19   maximum date. *See e.g. Thornhill Publishing Company, Inc. v. General Telephone & Electronics*

20   *Corp.,* 594 F.2d 730, 738 (9th Cir. 1979) ("conclusory and speculative affidavits that fail to set

21   forth ... any specific facts within [the plaintiff's] personal knowledge in support of [plaintiff's

22   assertion]" insufficient to raise genuine issues of fact and defeat summary judgment). Plaintiff

23   cannot avoid summary judgment based on such allegations.

24

REPORT AND RECOMMENDATION - 19

1    And even if plaintiff had shown that he was held past his release date, confinement

2    beyond the end of an inmate's sentence only gives rise to § 1983 liability if the inmate's

3    continued detention was the result of "deliberate indifference" by state actors. *Haygood v.*

4    *Younger,* 769 F.2d 1350, 1354 (9th Cir.1985) (en banc); *See Barnacascel v. Montana, Dep't of*

5    *Corr.,* 103 F. App'x 195, 196 9th Cir. 2004) (citing *Haygood,* 769 F.2d at 1354) (holding that

6    confinement beyond the end of a prisoner's sentence requires deliberate indifferent by state

7    actors).  To establish deliberate indifference, plaintiff must show that defendants actually knew

8    of his condition and risk of harm, yet failed to take reasonable steps to eliminate that risk.

9    *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

10    In *Haygood v. Younger,* the Ninth Circuit held that a prisoner stated a cause of action for

11    violation of his Eighth and Fourteenth Amendment rights when, "after being put on notice, [two

12    prison record officers,] simply refused to investigate a computational error," thereby prolonging

13    the prisoner's detention. *Haygood,* 769 F.2d at 1355. The Ninth Circuit held that "the denial of

14    due process occurred where state officers, through established interpretations of the regulations

15    for setting release dates, without affording Haygood an opportunity to be heard, chose to extend

16    his custodial period. This de facto government policy gave rise to a § 1983 claim against Records

17    Officers Cranke and Seymour approximately seventeen months before Haygood's litigation

18    established the proper release date." *Id.* at 1358. Significantly, Haygood wrote a letter to the

19    warden of the prison where he was incarcerated questioning the running of his sentence, which

20    was investigated by the two records officers. *Id.* at 1353.

21    Plaintiff does not make this showing. Plaintiff alleges "I first complained that my end

22    date was wrong in 2011 and or 2012[.]" Dkt. 31 at 31. Unlike the plaintiff in *Haygood*, plaintiff

23    has failed to allege or set forth any evidence regarding the named defendants' personal

24

REPORT AND RECOMMENDATION - 20

1   involvement in his alleged unlawful detention. Plaintiff does not allege that he received any

2   written communication from defendants, nor does he provide details regarding their involvement

3   in the calculation of his community custody. Although plaintiff has attached copies of his

4   discovery responses, which show that defendant Thiessen was responsible for tolling his

5   sentence between January 2013 and February 2013, and defendant Mitchell was responsible for

6   tolling his sentence in October 2013, this does not show that defendants Thiessen or Mitchell

7   were responsible for calculating plaintiff's statutory maximum expiration date or tolling during

8   plaintiff's entire community custody supervision.[4] Thus, plaintiff has not shown that the named

9   defendants had any knowledge of plaintiff's alleged unlawful detention, or that they acted with

10  deliberate indifference to such a risk of harm.

11      Thus, plaintiff has failed to meet his burden to establish the absence of a genuine issue of

12  material fact or to demonstrate that any reasonable jury could find in his favor. The Court

13  recommends granting defendants' second motion and dismissing plaintiff's claim as to his

14  release date.

15  **5. Retaliation**

16      Plaintiff contends that he filed a lawsuit in 2008 and subsequently, defendants subjected

17  him to harassment. Dkt. 31 at 25-27. Defendants do not directly address this claim, and instead,

18  argue summarily that plaintiff's conclusory allegations are insufficient to survive summary

19

20

21      [4] Plaintiff also attaches a declaration stating that defendant Hernandez visited plaintiff at

22  his job site and never told plaintiff that he had failed to report in January and February 2013.
    Dkt. 84 at 60-61. Plaintiff also submits discovery responses from defendants stating that

23  defendant Hernandez was responsible for tolling plaintiff's sentence in October 2013. However,
    as discussed, the Court recommends dismissing defendant Hernandez for a lack of personal

24  jurisdiction.

1    judgment. Dkt. 85. A liberal construction of plaintiff's allegations are that he is raising a

2    retaliation claim under the First Amendment.

3         To prove a First Amendment claim of retaliation under § 1983, plaintiff must show: (1)

4    he was subjected to adverse action; (2) the adverse action was imposed because of certain

5    conduct; (3) the conduct giving rise to the adverse action is legally protected; (4) the adverse

6    action chilled the prisoner's speech; and (5) the adverse action did not advance a legitimate

7    penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). In addition, the

8    plaintiff must show retaliation was the substantial or motivating factor behind the conduct of the

9    prison official. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977);

10   *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009).

11        Plaintiff has not sufficiently alleged facts supporting a claim of retaliation. While he

12   alleges he was engaged in protected speech when he filed his 2008 lawsuit, plaintiff fails to

13   identify any adverse actions taken by any of the defendants. Plaintiff only alleges that he was

14   harassed, but fails to allege any facts or submit any evidence to support his conclusory

15   allegation. It appears that plaintiff is alleging that because he filed a previous lawsuit, defendants

16   must have acted in retaliation when they determined that he had violated the conditions of his

17   community custody. However, outside of plaintiff's unsupported and conclusory assertion,

18   plaintiff has offered no evidence to support causation, that the "substantial" or "motivating"

19   factor behind defendants' actions was plaintiff's lawsuit. *See Brodheim,* 584 F.3d at 1271;

20   *Taylor,* 880 F.2d at 1045 (conclusory allegations of retaliation insufficient). Thus, the Court

21   recommends granting defendants' second motion as to this claim and dismissing any retaliation

22   claims against defendants.

23   **6.  State Law Claims**

24

1    To the extent that plaintiff attempts to state a claim under Washington law with respect to

2 the alleged violations of RCW 9.94A.737, in the absence of a federal claim, this Court should

3 decline to exercise pendant jurisdiction.

4    In a case involving federal and state claims, this Court has the discretion to assume

5 supplemental jurisdiction over state law claims that "derive from a common nucleus of operative

6 fact" and "are so related to the federal that they form part of the same case or controversy."  28

7 U.S.C. § 1367(a); *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 165 (1997).  In

8 deciding whether to exercise supplemental jurisdiction, district courts should "consider and

9 weigh in each case, and at every stage of the litigation, the values of judicial economy,

10 convenience, fairness, and comity."  *City of Chicago, supra*, at 172-73 (*quoting Carnegie-Mellon*

11 *University v. Cohill*, 484 U.S. 343, 357 (1988)).  "In the usual case in which all federal law

12 claims are eliminated before trial, the balance of factors . . . will point toward declining to

13 exercise jurisdiction over the remaining state law claims," *Acri v. Varian Associates, Inc.*, 114

14 F.3d 999, 1001 (9th Cir .1997) (en banc) (*quoting Carnegie-Mellon, supra*). Because plaintiff's

15 federal claims fail as a matter of law, the undersigned recommends that this Court decline

16 supplemental jurisdiction over any state law claims.

17                                    **CONCLUSION**

18    The Court recommends granting defendants' second motion for summary judgment (Dkt.

19 80) and that plaintiff's claims be dismissed. The Court recommends denying defendants' first

20 motion for summary judgment (Dkt. 52) as duplicative.

21    Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

22 fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

23 6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

24

REPORT AND RECOMMENDATION - 23

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 31, 2017**, as noted in the caption.

Dated this 9th day of March, 2017.

J. Richard Creatura
United States Magistrate Judge